UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TRUSTEES OF EMPIRE STATE
CARPENTERS ANNUITY,
APPRENTICESHIP, LABOR-MANAGEMENT
COOPERATION, PENSION AND WELFARE
FUNDS,

                Plaintiffs,

       -against-

BAYWOOD CONCRETE CORP.,
                Defendant.
--------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
13-CV-6403 (ADS) (ARL)

**APPEARANCES:**

**Virginia & Ambinder LLP**
*Attorneys for the Plaintiffs*
40 Broad Street, 7th floor
New York, NY 10004
    By: Charles R. Virginia, Esq.
        Richard B. Epstein, Esq.
        Michael Howard Isaac, Esq., Of Counsel

**The Ziskin Law Firm, LLP**
*Attorneys for the Defendant*
6268 Jericho Turnpike, Suite 12A
Commack, NY 11725
    By: Richard B. Ziskin, Esq.
        Suzanne Harmon Ziskin, Esq., Of Counsel

**SPATT, District Judge**.

On November 15, 2013, the Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds (the "Plaintiffs" or the "Funds") commenced this action against the Defendant Baywood Concrete Corp. (the "Defendant") to confirm and enforce an arbitration award.

Presently before the Court is a motion by the Plaintiffs pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment.

1

For the reasons set forth below, the Court grants the Plaintiffs' motion for summary judgment and confirms the arbitration award.

## I. BACKGROUND

Unless otherwise specified, the following facts are drawn from the parties' Rule 56.1 statements.

The Plaintiffs are employer and employees trustees of: (i) multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"); and (ii) a labor management cooperation committee established under section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 ("LMRA"). (Compl. at ¶¶ 4–5; Answer at ¶¶ 4–5.)

The Funds maintain their principal place of businesses in Happauge, New York. (Id.)

The Defendant is a New York corporation that is engaged in the business of commercial concrete installation. (Cunha Decl. at ¶ 4.)

On July 5, 2007, the Defendant executed a Compliance Form in which it "agree[d] to be bound" for the period May 1, 2007 to April 30, 2010 by a collective bargaining agreement ("the Local 7 CBA") entered into by the Empire State Regional Council of Carpenters (the "Union"), on behalf of its Local Union 7, and the "Independent Employers/the Employer's Association." (Craven Decl., Ex. A.)  The parties agree that once the Defendant signed the Compliance Form, it became bound by the Local 7 CBA.

Article VIII of the Local 7 CBA requires the Defendant to make specified hourly contributions to the Funds for every hour of work performed by each carpenter it employs within the jurisdiction of the Local 7 CBA, which includes, "all of Suffolk County and all of Nassau

County except that part of the Southern State Parkway and west of Seaford Creek." (Craven Decl., Ex. B, at Art. I, VIII.) These contributions are referred to by the parties as "fringe contributions."

Article VIII(C) of the Local 7 CBA also vests the Funds with the authority to audit the Defendant's books and payroll records to ensure that the Defendant complies with its obligations to make fringe contributions to the Funds.

In the event that the Defendant fails to make the fringe contributions, Article VIII(d) states that it may be liable for: (i) the principal amount of the unpaid contributions; (ii) an amount equal to the to the "greater of (a) interest on the unpaid contributions at the prime rate or (b) liquidated damages equal to twenty percent (20%) of the delinquency"; (iii) attorneys' fees; (iv) costs of suit; and (v) the costs of any "required audit."

Finally, Article VIII states that the Defendant agrees that it is bound by the "Agreement and Declarations of Trust," the "Plans," and the "Rules and Regulations" adopted by the Funds. The Plaintiffs assert, and the Defendant appears not to dispute, that this provision incorporates the Funds' Joint Policy for Collection of Delinquent Contributions (the "Collection Policy"). (Craven Decl., Ex. E.)

Also, the Collection Policy requires the parties to arbitrate disputes over the Defendant's failure to pay fringe benefits before J.J. Pierson ("Pierson"). (See id. at Art. 2.1, 2.2.) To initiate arbitration, the Collection Policy requires the Funds to send the Defendant a Notice to Arbitrate on "Fund Letterhead by certified mail/return receipt on the first month following the date the First Notice Letter is sent." (See id., Ex. B.)

On October 24, 2007, the Defendant executed a Designation of Bargaining Agent authorizing the Association of Concrete Contractor of New York, Inc. (the "Association") to

3

negotiate, on behalf of the Defendant, a new CBA with the Union.  (Hansen Decl., Ex. D.)  According to the Defendant, once it signed the Designation, it opted out of the Local 7 CBA and into the following CBAs: (i) a CBA between the Association and the Union covering the period May 1, 2007 to April 30, 2010; (ii) a CBA between the Association and the Union covering the period May 1, 2010 to April 30, 2011; and (iii) a CBA between the Northeast Regional Council, the successor to the Union, and the Association covering the period July 1, 2011 to May 31, 2016 (collectively, the "Association CBAs").  (Hansen Decl. at ¶¶ 6–9.)  Therefore, according to the Defendant, it was bound by the Association CBAs, not the Local 7 CBA, from July 1, 2009 to September 13, 2013, which is the period relevant to the instant dispute.

The Plaintiffs dispute that the Defendant ever formally opted out of the Local 7 CBA.  (The Pl.'s 56.1 Statement at ¶ 1.)  However, they assert that this dispute is not material because the Association CBAs contain provisions that are materially similar to the relevant provisions of the Local 7 CBA:  namely, they all require the Defendant to: (i) make specified fringe contributions to the Funds; (ii) authorize the Funds to perform an audit of its records to ensure that it makes the required contributions; and (iii) in the event of failure to pay the required contributions, be liable for the principal amount of unpaid contributions, interest, attorneys' fees, and costs related to suit or audit.  (Hansen Decl., Ex. D, at Art. 16; Ex. E, at Art. 16; Ex. F, at Art. 16.)

Also of importance, all of the Association CBAs state that the "employer agrees to be bound" by the "agreements, declarations of trust, plans or other relevant documents" of the Funds.  (See id.)  Accordingly, the Defendant asserts that the Association CBAs also incorporate the terms of the Collection Policy, including the arbitrations provisions discussed earlier.  (See Pls.' 56.1 Statement at ¶¶ 7–8.)

4

On April 4, 2013, the Funds engaged Schultheis & Pantettieri, LLP ("Schultheis") to conduct an audit of the Defendant's records for the period July 1, 2009 to September 13, 2013. Schultheis issued a report concluding that the Plaintiff had failed to pay $183,199.96 in fringe benefit contributions to the Funds for that period. Accordingly, Schultheis calculated that as of April 4, 2013, the Defendant owed the Funds a total of $256,019.51, which consisted of: (i) $183,199.96 in unpaid contributions; (ii) interest of $32,083.56; (iii) audit costs of $4,096.00; and (iv) 20% liquidated damages in the amount of $36,639.99. (Cunha Decl., Ex. A.)

Schultheis attached to the report a spreadsheet that lists the following information with regard to certain of the Defendant's employees: the "Total Hours Worked"; "Fringe Rate"; "Fringes Due"; "Interest"; "Adjustments"; and "Total Amount Due." (Id.) In a declaration, Joseph Cunha ("Cunha"), the President of the Defendant, states that the hours listed in the audit report are excessive. (Cunha Decl. at ¶¶ 14–17.) In particular, he points to Appendix A, which lists the "Adjustments" and "Total Hours" worked for Jose P. Marques ("Marques"), an employee of the Defendant, for the month of the December 2010 as 839 hours. (Id. at ¶ 14.) Cunha asserts that 839 hours is an unreasonable number of hours worked because it represents more hours than the total number of hours in a given month. (Id.)

Cunha also asserts that the hours listed in the audit report are inconsistent with payroll records that it submitted to Schultheis (Id. at ¶¶ 15–16.) However, neither Cuna, nor the Defendant, attach any of its payroll records to its papers.

The Plaintiffs dispute Cunha's reading of the audit reports. In support, they rely on the declaration of Steven Bowen ("Bowen"), a co-director of audit services at Schultheis who supervised the audit of the Defendant's records. (Bowen Decl. at ¶ 1.) Bowen stated that the "Adjustments" and the "Total Hours Worked" columns estimates "hours worked by each

5

employee per quarter, based upon Bohemia Concrete Corporation's quarterly tax documents." (Bowen Decl. at ¶ 3.) Thus, according to Bowen, the audit report reflects Marques's hours worked in the final quarter of 2010, and not, as the Defendant contends, in the month of December.

On May 17, 2013, Kim Tompuri ("Tompuri"), a collections coordinator for the Funds, sent the Defendant a Notice of Intent to Arbitrate ("Notice"). (Craven Decl., Ex. F.) The Notice included a demand for arbitration regarding the Defendant's alleged unpaid fringe contributions and scheduled a June 18, 2013 hearing before Pierson. (Id.) It further advised the Defendant:

> In the event of your failure to appear, the hearing will proceed in your absence, resulting in the issuance of a default Award against you . . . . [I]n accordance with the Funds' Policy on Collection of Delinquent Contributions and applicable law, in addition to the Audit Delinquency, the Trustees will seek an award of liquidated damages and the costs of collection, including, but not limited to, attorneys' fees, the costs of the arbitration and related expenses. Unless you apply for a stay of arbitration pursuant to Civil Procedure Laws and Rules Section 7503(c) within twenty days after service of this notice, you will be thereafter precluded from asserting that a valid agreement was not made[.]

(Id.)

In his declaration, Cunha states, "The company has no record receiving the arbitration notice." (Cunha Decl. at ¶ 11.) In response, the Defendants submit a copy of U.S. Post Office Certified Mail receipt indicating the Defendant received the Notice on May 20, 2013. (Craven Decl., Ex. B.)

On July 18, 2013, Pierson held a hearing, during which Bowen, the auditor, as well as Richard Craven ("Craven"), Council Representative for the Union, and Kim Tompuri ("Tompuri"), appeared for the Funds. (Craven Decl., Ex. G.) The Defendant failed to appear at the hearing. (Id.)

On September 13, 2013, Pierson issued a written order finding that: (i) the Defendant is a signatory of "one or more collective bargaining agreements" with the Union that require it to make fringe contributions to the Funds on a monthly basis on behalf of workers covered by those agreements; (ii) the Defendant employed individuals covered by the agreements during the pay roll period July 1, 2009 to September 13, 2013; (iii) in accordance with the terms of those agreements, an independent auditor performed an audit to determine whether the Defendant submitted the required contributions; (iv) the audit report was presented by the Funds to the Defendant; and (v) the Defendant violated the terms of the agreements by "failing to make its required contributions to the funds between July 1, 2009 to September 13, 2013." (Craven Decl., Ex. F, at ¶¶ 1–6.)

Accordingly, for the period July 1, 2009 to September 13, 2013, Pierson awarded the Funds a total amount of $260,499.43, which consisted of: (i) $183,199.96 in delinquent contributions; (ii) $35,516.48 in interest; (iii) $36,639.99 in liquidated damages; (iv) $4,096 in auditing costs; (v) $297 in reasonable attorneys' fees; and (vi) $750 in arbitration fees. (Id. at ¶ 12.)

Despite making demands on the Defendant, it has not paid any of the arbitration award to the Funds.

As noted, on November 15, 2013, the Plaintiffs commenced this action seeking (i) confirmation of the arbitration award; (ii) a judgment against the Defendant in the amount of $260,499.43, plus interest from September 13, 2013, the date of the arbitration award; and (iii) attorneys' fees and costs arising from this action. (Compl. at ¶ 15.)

In their memoranda, the Plaintiffs state that they "intend to move for an award of attorneys' fees and costs should the instant motion be granted." (The Pls.' Mem. of Law at 6.)

As such, the Court will not address the Plaintiffs' entitlement to attorneys' fees, costs, or pre-judgment interest.

## II. DISCUSSION

### A. Legal Standards

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."

"Where the moving party demonstrates 'the absence of a genuine issue of material fact,' Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In th**is** regard, a party "must do more than simply show that there is some metaphysical doubt as to the material facts[.]" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  Further, the opposing party "'may not rely on conclusory allegations or unsubstantiated speculation[.]'" F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)).

"Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." Id. (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

8

**B. As to the Plaintiffs' Motion**

As noted, the Plaintiffs seek to confirm the arbitrator's award of $260,499.43 and a judgment against the Defendant in the same amount. For the reasons set forth below, the Court grants the Plaintiffs' motion.

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998). "'Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court.'" Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Co-op., Pension & Welfare Funds v. Thalle/Transit Const. Joint Venture, No. 12-CV-5661 JFB ARL, 2014 WL 3529728, at *4 (E.D.N.Y. July 15, 2014) (quoting N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers E., No. 11–CV–04421 (ENV)(RLM), 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012)).

In this regard, a "court may not 'reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL-CIO, 118 F.3d 892, 896 (2d Cir. 1997) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987)). Rather, the court must confirm the arbitration award so long as the award "draws its essence from the collective bargaining agreement." Id. (quoting Misco, 484 U.S. at 36). Indeed, according to the Supreme Court, "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's

9

'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740 (2001) (quoting Misco, 484 U.S. at 39.)

In addition, Section 10 of Title 9 of the United States Code, the Federal Arbitration Act ("FAA"), provides that a federal court can vacate an arbitrator's award if it finds that: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators, or either of them"; (3) the arbitrators were "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10 (West).

In the instant case, it is undisputed that the Association CBAs and the Local 7 CBAs to which the Defendant was bound incorporated the terms of Funds' Collection Policy, which provided the arbitrator with the authority to issue an award against the Defendant for failing to pay fringe contributions. (See Pls.' 56.1 Statement at ¶ 9; Def.'s 56.1 ¶ 9.) Further, Pierson issued the award based on his review of the Association CBAs and the Local 7 CBAs, which all required that the Defendant make fringe contributions to the Funds on behalf of its employees. These CBAs also made the Defendant liable for unpaid contributions, interest, attorney's fees, and costs related to an audit. (Hansen Decl., Ex. D, at Art. 16; Ex. E, at Art. 16; Ex. F, at Art. 16.) Moreover, the award of $260,499.43 was based on Pierson's review of the audit report and after hearing testimony from the auditor and representatives of the Funds. (Hansen Decl., Ex. G, at ¶¶ 1, 9, 12.)

Therefore, Pierson's award of $260,499.43 was clearly within the scope of his authority and "draws its essence" from the Local 7 and Association CBAs. See Thalle/Transit Const. Joint Venture, 2014 WL 3529728, at *5 ("In sum, the arbitrator issued an award based upon the only evidence submitted at the arbitration hearing. His award is clearly consistent with that evidence, and it certainly draws its essence from the CBA."); New York City Dist. Council of Carpenters Pension Fund v. E. Millenium Const., Inc., No. 03 CIV. 5122(DAB), 2003 WL 22773355, at *1 (S.D.N.Y. Nov. 21, 2003) ("[T]he arbitrator, Mr. Maher, clearly acted within the authority given to him by the Collective Bargaining Agreement. The Agreement required the parties to submit all disputes regarding Defendants' benefit fund payment obligations to Plaintiffs to binding arbitration in front of Mr. Maher, Compl. ¶ 10, and Mr. Maher expressly referred to Defendant's payment obligations as stated in the Agreement when rendering his award decision. See Arb. Op. at 2. Accordingly, the Court finds no reason why the arbitration award should not be confirmed.").

The Defendant resists confirmation of the award because it asserts that (i) the Plaintiffs failed to introduce proof that the Defendant received the Notice of Arbitration; and (ii) the Pierson "manifestly disregarded" the inaccuracies in the audit report. (The Def.'s Opp'n Mem. of Law at 7–8; 11.)

Both of these arguments essentially invite the Court to re-consider the factual findings of Pierson that (i) the Defendant received notice of the arbitrations; and (ii) the audit report accurately reflected the amount of hours worked by the Defendant's covered employees. As the cases above make clear, the Court cannot re-visit the merits of the arbitrator's findings. If the Defendant had wished to raise these arguments, it should have appeared at the September 13, 2013 arbitration hearing. It did not, and its arguments are, therefore, improper for the Court to

consider in reviewing the propriety of the arbitrator's award. See Misco, Inc., 484 U.S. at 39 ("[S]illy, factfinding . . . is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts."); Tate v. Fischer Steel Corp., 791 F.2d 935 (6th Cir. 1986) ("Labor arbitrators' awards may not be vacated on the basis of new evidence. Since the arbitrator made a specific finding, on the record, that Tate was not the most senior laid-off helper, it was impermissible to attack this factual finding with post-arbitration affidavits."); Thalle, 2014 WL 3529728, at *4 ("The time has passed for Thalle/Transit to dispute the conclusions of the [Audit] Report upon which the arbitration award at issue was based. In fact, because the Supreme Court has held that a court should confirm even an arbitration award based upon 'serious error,' Major League Base ball Players Ass'n, 532 U.S. at 509, Thalle/Transit's argument that the arbitration award was based on 'clear and convincing error' is misplaced.").

In addition, the Defendant argues that the Pierson "clearly exceeded his authority" because "the Association [CBA] annexed as Exhibit D to the declaration of Richard J. Craven is unexecuted and therefore was not only insufficient evidence upon which the arbitration award was based, but also provides insufficient basis for the enforcement of the arbitration award." (The Def.'s Opp'n Mem. of Law at 10–11) (emphasis in original). It further argues that because the Plaintiffs failed to attach all copies of the Association CBAs to their present motion, it is "clear" that the "arbitrator did not review valid executive collective bargaining agreements." (Id. at 11.)

This argument is clearly without merit. The Defendant offers no evidence that Pierson did not consider the Association CBAs in his decision. Nor does it dispute that it was bound by the Association CBAs. To the contrary, the Defendant attaches to its own papers signed copies of the Association CBAs and concedes that it is bound by them. (See Def.'s Opp'n Mem. of

12

Law at 2–3; Hansen Decl. at ¶¶ 5–9.) Further, the Defendant does not dispute that those CBAs incorporate the Collection Policy, which clearly provide Pierson with the authority to arbitrate disputes over fringe contributions. Under these circumstances, the fact that Plaintiff did not submit signed copies of the Association CBAs with its present motion is not remotely relevant to the question of whether Pierson exceeded the scope of his authority in issuing an arbitration award, as the Defendant appears to contend.

In sum, the Court finds that Pierson's award of $260,499.43 was within the scope of his authority and "draws its essence" from the Local 7 and Association CBAs. Accordingly, the Court grants the Plaintiffs' motion to confirm the arbitrator's award of $260,499.43 and finds that summary judgment is warranted.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiffs' motion, confirms the arbitrator's award, and directs the Clerk of the Court to enter judgment in favor of the Plaintiff and against the Defendant in the amount of $260,499.43**.**

The Plaintiffs may make a motion seeking additional post-judgment relief in the form of attorneys' fees, costs, or interest within thirty days of the date of this Order.

**SO ORDERED.**
Dated: Central Islip, New York
September 2, 2015

                                               _/s/ Arthur D. Spatt_
                                                  ARTHUR D. SPATT
                                              United States District Judge